**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| RIGHTQUESTION, LLC,<br><br>                         *Plaintiff,*<br><br>           v.<br><br>T-MOBILE USA, INC. and<br>T-MOBILE US, INC.,<br><br>                         *Defendants.* | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff RightQuestion, LLC ("RightQuestion") brings this action for patent infringement

against Defendants T-Mobile USA, Inc. and T-Mobile US, Inc. (collectively, "Defendants" or "T-

Mobile"), and hereby alleges, on knowledge as to its own actions, and upon information and belief

as to all other matters, as follows:

**NATURE OF THE CASE**

1.      This is a civil action for T-Mobile's infringement of U.S. Patent Nos. 10,674,009

("the '009 patent"), 11,005,989 ("the '989 patent"), and 11,856,132 ("the '132 patent")

(collectively, the "Patents-in-Suit" or "asserted patents," attached hereto as Exhibits 1, 2, and 3,

respectively) under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

2.      RightQuestion seeks damages and other relief for T-Mobile's infringement of

RightQuestion's patent rights relating to call-authentication/verification technologies intended to

combat, for example, spoofing, fraud, nuisance, and spam calls on T-Mobile's IMS (IP Multimedia

Subsystem) network and supporting software and network elements such as CVT (Call Validation

Treatment), STI-VS (Secure Telephone Identity Verification Service), CSCF (Call Session Control Function), Session Border Controller (SBC), Telephony Application Server (TAS), and/or the T-Mobile T-Life or Scam Shield phone app (collectively, "the accused system").

## BACKGROUND

3.      The inventions in this case relate to important technology that, *inter alia*, helps rid the public of unwanted calls, such as spoofing, fraud, nuisance, and spam calls. A 2019 declaratory ruling from the Federal Communications Commission estimated that there are 30 billion scam calls a year in the United States, and that the benefit floor for blocking those calls is, conservatively, $3 billion. *In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls*, CG Docket No. 17-59, Declaratory Ruling and Third Further Notice of Proposed Rulemaking, adopted June 6, 2019, released June 7, 2019, ¶ 40. https://docs.fcc.gov/public/attachments/FCC-19-51A1.pdf.

4.      Bjorn Markus Jakobsson, Ph.D., the inventor of the Patents-in-Suit, understood that calling devices and carrier networks can store information associated with calling devices to identify and manage unwanted calls. He invented a technology that would, among other things, help avoid unwanted calls, even when a caller deliberately falsifies the information that is transmitted to caller identification (caller ID) to disguise their identity—known colloquially as spoofing. Dr. Jakobsson filed patent applications to protect his invention as early as 2013, and the U.S. Patent & Trademark granted him the '009, '989, and '132 patents.

5.      Years after Dr. Jakobsson's invention, carriers including T-Mobile finally began to take steps to combat unwanted calls. Among other measures, a call-authentication technology called "STIR/SHAKEN" was developed. The FCC adopted a Report and Order on March 31, 2020, mandating that for the primary benefit of consumers, originating and terminating phone

companies implement at least certain aspects of STIR/SHAKEN in their networks by June 30, 2021. *See* Federal Communications Commission, Report and Order and Further Notice of Proposed Rulemaking, FCC 20-42A1 (Mar. 31, 2020), available at https://docs.fcc.gov/public/attachments/FCC-20-42A1.pdf.

6.      T-Mobile implements STIR/SHAKEN at least in part through the STI-VS network element within the accused system.

7.      In addition to implementing STIR/SHAKEN, T-Mobile also added Call Validation Treatment (CVT) to its network, which works alone or in conjunction with STI-VS, to protect customers from unwanted calls. CVT uses reputation scores and other information to determine how a call should be handled, for example, by notifying the recipient of the call whether the call has been verified or presents a risk.[1]

8.      T-Mobile has used and continues to use Dr. Jakobsson's patented inventions to implement call-protection technologies, including CVT and STI-VS, on its network, resulting in the infringement of the Patents-in-Suit.

**THE PARTIES**

9.      Plaintiff RightQuestion, LLC is a California limited liability company having its principal place of business at 250 Oak Grove Avenue, Number 202, Menlo Park, California 94025.

10.      On information and belief, Defendant T-Mobile US, Inc. is a Delaware corporation with a principal place of business at 12920 Southeast 38th Street, Bellevue, Washington 98006. On information and belief, T-Mobile US, Inc. may be served through its registered agent for service: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808 or

---

[1] https://support.firstorionenterprise.com/hc/en-us/articles/35143518361741-How-does-PROTECT-Risk-Detection-work; https://nanc-chair.org/docs/CATA_Report_Best_Practices_for_Terminating_VSPs_using_Caller_ID_Authentication_Information_Feb_2022.pdf.

Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

11.     On information and belief, Defendant T-Mobile USA, Inc. is a Delaware corporation with a principal place of business at 12920 Southeast 38th Street, Bellevue, Washington 98006. On information and belief, T-Mobile USA, Inc. may be served through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

12.     T-Mobile USA, Inc. is registered to do business in the state of Texas under Texas Secretary of State file number 12958406. T-Mobile USA, Inc. is a wholly owned subsidiary of T-Mobile US, Inc. *See* T-Mobile US's Form 10-K; T-Mobile Corporate Structure SEC Filing.

13.     T-Mobile operates one or more IMS networks to provide telecommunications services, including VoLTE and VoIP call services, in the United States under brand names including, but not limited to, "T-Mobile," "Sprint," "MetroPCS," and "Metro by T-Mobile."

## JURISDICTION AND VENUE

14.     RightQuestion realleges the foregoing paragraphs as if fully set forth herein.

15.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

16.     Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

17.     Personal jurisdiction exists generally over the Defendants because each Defendant has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within Texas, including in the Eastern District of Texas. Personal jurisdiction also exists over each Defendant because each, directly or through subsidiaries, makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products and/or services within Texas, including in the Eastern District of Texas, that

infringe one or more claims of the Patents-in-Suit. Further, Defendants have placed or contributed to placing infringing products and/or services into the stream of commerce knowing or understanding that such products and/or services would be sold and used in the United States, including in this District. Defendants are registered or authorized to do business in Texas and maintain an agent authorized to receive service of process within Texas.

18.    T-Mobile is subject to personal jurisdiction under the provisions of the Texas Long Arm Statute, TX CIV. PRAC. & REM CODE § 17.041 et seq., by virtue of the fact that, upon information and belief, T-Mobile has availed itself of the privilege of conducting and soliciting business within this State, including engaging in at least some of the infringing activities in this State, as well as by others acting as T-Mobile's agents and/or representatives, such that it would be reasonable for this Court to exercise jurisdiction consistent with principles underlying the U.S. Constitution, and the exercise of jurisdiction by this Court would not offend traditional notions of fair play and substantial justice.

19.    On information and belief, T-Mobile has also established minimum contacts with this District and regularly transacts and does business within this District, including advertising, promoting and selling products and/or services in its stores, over the internet, through intermediaries, representatives and/or agents located within this District, that infringe the asserted patents. On further information and belief, T-Mobile has purposefully directed activities at citizens of this State including those located within this District. On information and belief, T-Mobile derives substantial revenue from the goods and services it provides to individuals in the state of Texas and in this District.

20.    On information and belief, T-Mobile has purposefully and voluntarily placed its products and/or services into the stream of commerce with the expectation that they will be

purchased and used by customers located in the State of Texas and the Eastern District of Texas. On information and belief, T-Mobile's customers in the Eastern District of Texas have purchased and used and continue to purchase and use T-Mobile's products and/or services.

21.     T-Mobile has also admitted or elected not to contest that it has transacted business in this District. *See Preferential Networks* at Answer at 2, ¶ 4; *Traxcell Techs.* at Answer ¶ 2; *Kevique Tech.* at Answer ¶¶ 5, 6. *See also* Answer to First Amended Complaint ¶¶ 19, 20, *Mobile Synergy Sols., LLC v. T-Mobile US, Inc. et al.*, No. 6:16-cv-01223 (E.D. Tex. Feb. 13, 2017), ECF No. 47.

22.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1400(b) because T-Mobile has committed acts of infringement in this District and has a regular and established place of business in this District. By way of example and without limitation, T-Mobile makes, uses, sells, offers to sell, and/or imports products and/or services that are accused of infringing the Patents-in-Suit into and/or within this District and maintains a permanent and/or continuing presence within this District. Alternatively, T-Mobile has induced or contributed to its customers' direct infringement of the Patents-in-Suit in this District.

23.     For example, T-Mobile operates one or more telecommunications networks, doing business under the brand names "T-Mobile," "Sprint," "MetroPCS," and "Metro" (collectively, the "T-Mobile Networks"). The T-Mobile Networks include network infrastructure, and provide wireless, cellular, and other voice-service coverage throughout the United States, including within the Eastern District of Texas. The T-Mobile Networks, in whole or in part, incorporate and utilize the accused system.

24.     T-Mobile also advertises in the Eastern District of Texas, including but not limited to advertising the geographic coverage of the T-Mobile Networks within this District. By way of

example and without limitation, T-Mobile's website provides a "T-Mobile 5G & 4G Coverage map" that advertises T-Mobile's current 4G and 5G wireless network coverage in and around Marshall, Texas. T-Mobile advertises: "We've got the largest, fastest, most advanced 5G network." *See, e.g.,* https://www.t-mobile.com/coverage/network (last visited September 9, 2025). T-Mobile advertises that its 4Gm 5G, and T-Satellite with Starlink is available in the United States and within the Eastern District of Texas. *See, e.g.,* https://www.t-mobile.com/coverage/coverage-map?icid=MGPO_TMO_U_25MGSTATUS_677C000A88C1F90243146 (last visited September 9, 2025).



25.    T-Mobile also operates numerous brick and mortar retail stores in the Eastern District of Texas. These retail stores are physically located within this District, are regular and established places of business of T-Mobile, and are used by T-Mobile to actively market and sell services, including call-protection services, for the T-Mobile Networks that infringe the Patents-in-Suit. By way of example and without limitation, T-Mobile maintains brick and mortar retail stores in this District located, among other places, including stores in Marshall, Texas (1806 E End Blvd. N, Ste 100, Marshall, TX 75670), as well as surrounding areas (190 E Stacy Rd., 207, Allen, TX 75002; 1395 E Tyler St., Ste 104, Athens, TX 75751; 5899 Eastex Freeway, Suite 100, Beaumont, TX 77706; 2515 W University Dr., Denton, TX 76201; 597 E Round Grove Rd., Lewisville, TX 75067; 3320 Troup Hwy., Tyler, TX 75701; 3222 S Main St., Bldg. B, Lindale, TX 75771; 1521 W University Dr., 130, Mckinney, TX 75069; 7135 Preston Rd., Ste 200 Frisco, TX 75034; 2108 Gilmer Rd., Longview, TX 75604; 1101 Stone Street, Suite #107, Kilgore, TX 75662l 151 Industrial Dr. E, Ste 300, Sulphur Springs, TX 75482; 4415 North St., Ste 111, Nacogdoches, TX 75965; 4415 North St., Ste 111, Nacogdoches, TX 75965). *See, e.g.,*

https://www.t-mobile.com/stores/locator  (last visited September 9, 2025). T-Mobile uses these stores to sell telecommunications services, including call-protection services, provided via the accused system and that infringe the asserted patents (as discussed below). These stores are physically located within the District, are regular and established places of business of T-Mobile with signage of T-Mobile, and actively market T-Mobile's wireless services.

26.    T-Mobile has numerous employees who work in Texas, including within the Eastern District of Texas. In addition to its many retail stores in Texas and in this District, T-Mobile also maintains and operates research and development facilities at 7668 Warren Parkway, Frisco,    TX    75034.    *See,    e.g.*,    https://www.dallasnews.com/business/real-estate/2020/03/18/hundreds-of-t-mobile-workers-moving-to-new-frisco-headquarters/    (last visited September 9, 2025). T-Mobile has admitted that T-Mobile USA, Inc. maintains an office building at that address. *Telecom Network Solutions, LLC v. T-Mobile USA, Inc., et. al*, 2:21-CV-418, Dkt. 27 at ¶13 (E.D. Tex.).



BUSINESS › REAL ESTATE

**Hundreds of Metro by T-Mobile workers moving to new Frisco headquarters**

Workers from T-Mobile marketing, IT, engineering, human resources and finance will also be relocated from Richardson.

Metro by T-Mobile is moving its headquarters to the Duke Bridges VII building on the Dallas North Tollway at Warren Parkway. (T-Mobile)

9

27.     T-Mobile has solicited business in the Eastern District of Texas, has transacted business within this District, and has attempted to derive financial benefit from the residents of this District, including benefits directly related to T-Mobile's infringement of the Patents-in-Suit.

28.     T-Mobile has manufactured, used, sold, and/or offered for sale the T-Mobile Networks in the State of Texas and this District. At the time of filing of this Complaint, the T-Mobile Networks are available to consumers in Texas, including within District. The T-Mobile Networks, which include the accused system, are available in this District. T-Mobile derives benefits from its presence in this District, including, but not limited to, sales revenue. For example, T-Mobile receives revenue from its corporate stores in this District, by selling network access, products (e.g., phones, tablets, smart watches, etc.), and services and by receiving payment for its network access, products, and services.

29.     T-Mobile's acts of infringement and the presence of T-Mobile retail stores in the Eastern District of Texas establishes venue over T-Mobile under 28 U.S.C. § 1400(b). *See, e.g.*, *Intellectual Ventures II LLC v. FedEx Corp.*, Case No. 16-cv-980-JRG, 2017 WL 5630023, at *6–7 (E.D. Tex. Nov. 22, 2017) (venue proper based on "physical retail and service locations").

30.     In other recent actions, T-Mobile has either admitted or not contested that the Eastern District of Texas is a proper venue for patent infringement actions against it. *See, e.g.*, Answer to First Amended Complaint, at ¶¶ 7-10, *Fractus, S.A. v. AT&T Mobility LLC et al.*, No. 2:18-cv-00135-JRG (E.D. Tex. Dec. 13, 2018), ECF No. 116; Answer at ¶¶ 4, 5, *Preferential Networks IP, LLC v. T-Mobile US, Inc. et al.*, No. 2:17-cv-00626-JRG (E.D. Tex. Nov. 01, 2017), ECF No. 17; Answer at ¶¶ 4, 5, *Traxcell Techs., LLC v. T-Mobile, USA, Inc.*, No. 2:17-cv-00720-RWS (E.D. Tex. Jan. 23, 2018), ECF No. 8; Answer at ¶¶ 5, 6, *Kevique Tech., LLC v. T-Mobile USA, Inc.*, No. 2:17-cv-00095-JRG (E.D. Tex. Apr. 11, 2017), ECF No. 10; Answer to Amended

Complaint at ¶ 14, *Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc. et al.,* No. 2:21-cv-00034-JRG (E.D. Tex. Apr. 12, 2021), ECF No. 36.

31.     Defendants are properly joined under 35 U.S.C. § 299(a) because, on information and belief, Defendants commonly and/or jointly make, use, sell, offer to sell, and/or import the T-Mobile Networks, including the accused system, such that at least one right to relief is asserted against Defendants jointly, severally, and in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, selling, offering to sell, and/or importing into the United States of the same T-Mobile Networks, including the accused system, and such that questions of fact common to all Defendants will arise in this action.

## PATENTS-IN-SUIT

### U.S. Patent No. 10,674,009

32.     The '009 patent was duly and legally issued on June 2, 2020, and is entitled "Validating Automatic Number Identification Data."

33.     RightQuestion is the owner of the entire right, title, and interest to the '009 patent by assignment and has the sole right to sue and recover damages for any current, past, or future infringement.

34.     The '009 patent is valid and enforceable.

### U.S. Patent No. 11,005,989

35.     The '989 patent was duly and legally issued on May 11, 2021, and is entitled "Validating Automatic Number Identification Data."

36.     RightQuestion is the owner of the entire right, title, and interest to the '989 patent by assignment and has the sole right to sue and recover damages for any current, past, or future

infringement.

37.    The '989 patent is valid and enforceable.

*U.S. Patent No. 11,856,132*

38.    The '132 patent was duly and legally issued on December 26, 2023, and is entitled "Validating Automatic Number Identification Data."

39.    RightQuestion is the owner of the entire right, title, and interest to the '132 patent by assignment and has the sole right to sue and recover damages for any current, past, or future infringement.

40.    The '132 patent is valid and enforceable.

## COUNT I

*Infringement of U.S. Patent No. 10,674,009*

41.    RightQuestion realleges the foregoing paragraphs as if fully set forth herein.

42.    T-Mobile has infringed and continues to infringe one or more claims of the '009 patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a) *et seq.* by making, using, selling, offering for sale, or importing into the United States the T-Mobile Networks, including the accused system, which support call-protection services. To the extent that Defendants contract with third parties to provide any of the structure or functions of the accused system, Defendants control the accused system as a whole and obtain benefit from it.

43.    At least by the issue date of the '009 patent, T-Mobile had implemented and supported CVT and STI-VS within the accused system.

44.    Exhibit 4 is an exemplary claim chart, demonstrating on an element-by-element basis, how the accused system infringes claim 1 of the '009 patent.

45.    T-Mobile has known of the '009 patent at least as of the filing date of this

Complaint.

46.    Alternatively, T-Mobile has indirectly infringed and continues to indirectly infringe one or more claims of the '009 patent by inducing infringement by others, such as T-Mobile's customers, in this District and elsewhere in the United States, to implement and/or use the accused system, in violation of 35 U.S.C. § 271(b). For example, a T-Mobile customer may use the T-Mobile phone app (T-Life or Scam Shield) to share the contacts in a phone's address book with T-Mobile's CVT service to enroll the phone with the service and alter the way in which the CVT service treats calls made to the phone, such that the '009 patent is infringed by the accused system. T-Mobile induces such direct infringement through its affirmative acts of making, using, selling, offering to sell, and/or importing the accused system, which may include the T-Mobile phone app. T-Mobile performs these affirmative acts with knowledge of the '009 patent and with the intent, or willful blindness, that the induced acts directly infringe the '009 patent.

47.    T-Mobile has actual notice of its infringement of the '009 patent by the filing of this Complaint and, T-Mobile was or is now aware of the '009 patent or has willfully blinded itself as to the existence of the '009 patent and T-Mobile's infringement thereof.

48.    Alternatively, T-Mobile has also indirectly infringed and continues to indirectly infringe the '009 patent by contributing to direct infringement by others, such as T-Mobile's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c). T-Mobile's affirmative acts of (a) providing the T-Mobile app to customers in this District and elsewhere in the United States and (b) causing the accused system to be used and implemented by T-Mobile's customers who have installed the app, contribute to their customer's implementation and use of the accused system, such that the '009 patent is directly infringed by T-Mobile's customers. The T-Mobile app is material to the inventions claimed in the '009 patent, is not a

staple article or commodity of commerce, has no substantial non-infringing uses, and is known by T-Mobile to be especially made or adapted for use in the infringement of the '009 patent. T-Mobile performs these acts with knowledge of the '009 patent and with the intent, or willful blindness, that they cause direct infringement of the '009 patent.

49.     T-Mobile's infringement of the '009 patent has been willful and egregious.

### COUNT II

*Infringement of U.S. Patent No. 11,005,989*

50.     RightQuestion realleges the foregoing paragraphs as if fully set forth herein.

51.     T-Mobile has infringed and continues to infringe one or more claims of the '989 patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a) *et seq.* by making, using, selling, offering for sale, or importing into the United States the T-Mobile Networks, including the accused system, which support call-protection services. To the extent that Defendants contract with third parties to provide any of the structure or functions of the accused system, Defendants control the accused system as a whole and obtain benefit from it.

52.     At least by the issue date of the '989 patent, T-Mobile had implemented and supported CVT and STI-VS within the accused system.

53.     Exhibit 5 is an exemplary claim chart, demonstrating on an element-by-element basis, how the accused system infringes claim 1 of the '989 patent.

54.     T-Mobile has known of the '989 patent at least as of the filing date of this Complaint.

55.     Alternatively, T-Mobile has indirectly infringed and continues to indirectly infringe one or more claims of the '989 patent by inducing infringement by others, such as T-Mobile's customers, in this District and elsewhere in the United States, to implement and/or use the accused

system, in violation of 35 U.S.C. § 271(b). For example, a T-Mobile customer may use the T-Mobile phone app provided by T-Mobile to set the way in which the CVT service treats calls made to the phone and provides notifications of verified calls and unwanted calls to the phone, such that the '989 patent is infringed by the accused system. T-Mobile induces such direct infringement through its affirmative acts of making, using, selling, offering to sell, and/or importing the accused system, which may include the T-Mobile phone app. T-Mobile performs these affirmative acts with knowledge of the '989 patent and with the intent, or willful blindness, that the induced acts directly infringe the '989 patent.

56.    T-Mobile has actual notice of its infringement of the '989 patent by the filing of this Complaint and, T-Mobile was or is now aware of the '989 patent or has willfully blinded itself as to the existence of the '989 patent and T-Mobile's infringement thereof.

57.    Alternatively, T-Mobile has also indirectly infringed and continues to indirectly infringe the '989 patent by contributing to direct infringement by others, such as T-Mobile's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c). T-Mobile's affirmative acts of (a) providing the T-Mobile app to customers in this District and elsewhere in the United States and (b) causing the accused system to be used and implemented by T-Mobile's customers who have installed the app, contribute to their customers' implementation and use of the accused system, such that the '989 patent is directly infringed by T-Mobile's customers. The T-Mobile app is material to the inventions claimed in the '989 patent, is not a staple article or commodity of commerce, has no substantial non-infringing uses, and is known by T-Mobile to be especially made or adapted for use in the infringement of the '989 patent. T-Mobile performs these acts with knowledge of the '989 patent and with the intent, or willful blindness, that they cause direct infringement of the '989 patent.

58.    T-Mobile's infringement of the '989 patent has been willful and egregious.

## COUNT III

*Infringement of U.S. Patent No. 11,856,132*

59.    RightQuestion realleges the foregoing paragraphs as if fully set forth herein.

60.    T-Mobile has infringed and continues to infringe one or more claims of the '132 patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a) *et seq.* by using in the United States the T-Mobile Networks, including the accused system, which support call-protection services. To the extent that Defendants contract with third parties to provide any portions of the accused system, the use of the accused system, including those portions provided by third parties, to perform the infringing process is attributable to Defendants.

61.    At least by the issue date of the '132 patent, T-Mobile had implemented and supported CVT and STI-VS within the accused system.

62.    Exhibit 6 is an exemplary claim chart, demonstrating on an element-by-element basis, how the use of the accused system infringes claim 1 of the '132 patent.

63.    T-Mobile has known of the '132 patent at least as of the filing date of this Complaint.

64.    Alternatively, T-Mobile has indirectly infringed and continues to indirectly infringe one or more claims of the '132 patent by inducing infringement by others, such as T-Mobile's customers, in this District and elsewhere in the United States, to use the accused system, in violation of 35 U.S.C. § 271(b). For example, a T-Mobile customer may use the T-Mobile phone app provided by T-Mobile to use the accused system to receive notifications that show the results of call treatment resulting from STI-VS and CVT services on the accused system, such that the '132 patent is infringed by the accused system. T-Mobile induces such direct infringement through

its affirmative acts of making, using, selling, offering to sell, and/or importing the accused system, which may include the T-Mobile phone app. T-Mobile performs these affirmative acts with knowledge of the '132 patent and with the intent, or willful blindness, that the induced acts directly infringe the '132 patent.

65.    T-Mobile has actual notice of its infringement of the '132 patent by the filing of this Complaint and, T-Mobile was or is now aware of the '132 patent or has willfully blinded itself as to the existence of the '132 patent and T-Mobile's infringement thereof.

66.    Alternatively, T-Mobile has also indirectly infringed and continues to indirectly infringe the '132 patent by contributing to direct infringement by others, such as T-Mobile's customers, in this District and elsewhere in the United States, in violation of 35 U.S.C. § 271(c). T-Mobile's affirmative acts of (a) providing the T-Mobile app to customers in this District and elsewhere in the United States and (b) causing the accused system to be used by T-Mobile's customers who have installed the app, contribute to their customers' use of the accused system, such that the '132 patent is directly infringed by T-Mobile's customers. The T-Mobile app is material to the inventions claimed in the '132 patent, is not a staple article or commodity of commerce, has no substantial non-infringing uses, and is known by T-Mobile to be especially made or adapted for use in the infringement of the '132 patent. T-Mobile performs these acts with knowledge of the '132 patent and with the intent, or willful blindness, that they cause direct infringement of the '132 patent.

67.    T-Mobile's infringement of the '132 patent has been willful and egregious.

**PRAYER FOR RELIEF**

WHEREFORE, RightQuestion requests the following relief from this Court:

68.    A judgment that each Defendant is liable for infringement of one or more claims of

17

the '009, '989, and '132 patents.

  A.  A judgement that each Defendant's infringement has been and is willful.

  B.  Compensatory damages in an amount according to proof, and in any event no less than a reasonable royalty, including all pre-judgment and post-judgment interest at the maximum rate allowed by law and including an accounting of all infringements and/or damages not presented at trial.

  C.  An award of enhanced damages.

  D.  A declaration that this case is exceptional and an award of reasonable attorneys' fees.

  E.  A permanent injunction barring Defendant from continuing its infringement of Plaintiff's patents.

  F.  Plaintiff be awarded such other relief as the Court may deem appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury for all issues so triable.

Dated: September 24, 2025      Respectfully submitted,

                */s/ Andrea L. Fair*
                Robert F. Kramer
                CA Bar No. 181706 (Admitted E.D. Texas)
                rkramer@krameralberti.com
                **KRAMER ALBERTI LIM**
                **& TONKOVICH LLP**
                950 Tower Lane, Suite 1725
                Foster City, CA 94404
                Telephone: (650) 825-4300
                Facsimile:  (650) 460-8443

                Of Counsel:

                Andrea L. Fair

Texas Bar No. 24078488
andrea@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile:  (903) 757-2323


*Attorneys for Plaintiff RightQuestion, LLC*